**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

JOSEPH PORCILLO,

        Plaintiff,

vs.                                                         Case No. 3:08-cv-1090-J-32JRK

VISTAR CORPORATION, et al.,

        Defendants.

_____

## **ORDER[1]**

This is a case brought pursuant to the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.* It is before the Court on Defendants' Motion For Summary Judgment (Doc. 16) and plaintiff's response. (Doc. 20.) The potentially dispositive legal issue presented is whether plaintiff is an "eligible employee" entitled to benefits provided by the FMLA. See 29 U.S.C. § 2611(2); 29 C.F.R. § 825.110. In addition to the parties' filings, the Court has considered argument of counsel made at a hearing held January 19, 2010. (Doc. 23.)

**I.    Background[2]**

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it is intended to decide the motion addressed herein and is not intended for official publication or to serve as precedent.

[2] Consistent with summary judgment practice, the facts stated are either undisputed or are stated in a light most favorable to Plaintiff. See White v. Mercury Marine, 129 F.3d 1428, 1430 (11th Cir. 1997).

    The Court sets forth briefly only those facts relevant to the potentially dispositive legal issue to be decided. As to issues of causation and pretext, the Court determines that there

Plaintiff Joseph Porcillo began his employment with Roma Foods of Florida, Inc. ("Roma")[3] as a district sales manager on January 2, 2006. Porcillo's job with Roma involved the wholesale distribution of Italian food and pizza related products to businesses and restaurants. (Doc. 18-2 (Porcillo Dep. at 40); Doc. 18-9 (Klein Dep. at 24); Doc. 21-3 at 1 (Porcillo Aff. ¶1; Doc. 18-8 (Peak Dep. at 14).)

On November 13, 2006, Porcillo, then age 55, went to his family physician regarding a lump in his abdomen, and was immediately scheduled for an examination by a surgeon. The surgeon advised that Porcillo required immediate surgery because of an abdominal hernia. (Porcillo Aff. ¶ 3; Porcillo Dep. at 43-45 & Ex. 4.) Porcillo informed his supervisor Dan Klein and Roma Florida human resource generalist Jeanie Kelly on November 13, 2006 that he was scheduled for hernia surgery on December 1, 2006, and that he would be out for recovery for two and a half to three weeks. Porcillo said in an e-mail that he would "like to use my sick time, Presonal [sic] days, and part of my vacation time I have available, for the waiting period for the short term disability to kick in." (Doc. 18-5 (Kelly Dep. Ex. 3); Porcillo Dep. Ex. 6.) On November 14, 2006, Porcillo completed a "Request for Leave of Absence" form (sent to him by Kelly) for three weeks from December 1, 2006 to "approx" December 22, 2006. (Kelly Dep. at 21 & Ex. 2; Porcillo Dep. Ex. 7.) Roma approved Porcillo's leave request. (Porcillo Dep. at 57.)

---

are a genuine issues of material fact, and thus does not recite those disputed facts here.

[3] Roma is a division of defendant Performance Food Group Company, LLC, which is a wholly owned affiliate of defendant Vistar Corporation. (Doc. 16 at 1; Doc. 18-9 (Klein Dep. at 10-13) Doc. 18-6 (Pastorini Dep. at 9-11).)

On December 1, 2006, Roma sent Porcillo notification concerning his short term disability benefits through the company, which stated that "[s]hort-term disability benefits may continue for up to a total of 26 weeks . . . ." The notification included a paragraph regarding the FMLA, which said that "[i]nformation regarding the Act is posted at your worksite, and a summary of the Act is enclosed to help explain your rights." (Porcillo Dep. at 68 & Ex. 11.) The December 1 notification also stated that

> The time you are out on this short-term disability leave will be counted against your 12 weeks of FMLA leave, provided you meet eligibility requirements. Depending on your situation, under FMLA you may be eligible to extend your leave beyond the certified STD period. If you qualify for an extension, you will be required to utilize all accrued sick, vacation and personal holidays prior to going on an unpaid leave.

(Id.) Porcillo first used sick days and then received short-term disability benefits through Roma's insurance carrier while he was out on leave for a total of 10 weeks. (Porcillo Dep. at 57, 58, 68 & Ex. 11.)

Kelly testified about a document entitled "Vistar - Leaves of Absence - Pay and Benefits Information" which she said is "given to employees that are requesting FMLA, short-term disability leave, explaining basically what they qualify for to [sic] leave and how the plan works." (Kelly Dep. at 21 & Ex. 4.) That document states:

> Vistar complies fully with the Family and Medical Leave Act of 1993 (the "FMLA") which requires employers to provide up to 12 weeks . . . of job protected leave to eligible employees for certain family and medical reasons. Employees with one year of service who have worked at least 1,250 hours during the previous 12 months may take a total of 12 weeks of *combined* paid and unpaid leave within a "rolling" 12-month period (measured backward from the date an employee initiates the use of FMLA leave).

3

> Eligible full-time employees qualify for short-term disability on the first of the month following 6-months of employment with Vistar (employees with less than 6 months of service may use sick time and unpaid leave time for a medical condition).

(Kelly Dep. Ex. 4.) Kelly testified that this informational document normally would have been mailed to Porcillo along with the request for medical leave form (though Porcillo denies ever having received it). (Kelly Dep. at 22-24, 26-27 & Exs. 2, 4; Porcillo Dep. at 65-66 & Ex. 9.)

Porcillo had surgery on December 1, 2006, during which doctors repaired three hernias. (Porcillo Dep. at 69 & Ex. 12.) Because of the extensiveness of his incision, Porcillo remained in the hospital for five days. (Porcillo Dep. at 71.) On December 16, 2006, Porcillo was admitted to the hospital through the emergency room for a bowel obstruction, which resolved within 24 hours. (Porcillo Dep. at 71, 76-77 & Exs. 17, 18.) On December 28, 2006, Porcillo received further treatment for an infection of his umbilicus. (Porcillo Dep. at 80-81 & Ex. 20.)

On January 2, 2007, Porcillo passed his one-year anniversary with the company. (Kelly Dep. at 39.)

While he was out on leave, Porcillo kept in touch with his supervisor Klein and Roma's H.R. generalist Kelly. He e-mailed them and spoke with them on several occasions. (Porcillo Dep. at 85-87; Klein Dep. at 101-04; Kelly Dep. at 15.)

In the first week of January, 2007, Porcillo submitted a form to Roma, signed by Porcillo on January 2, 2007, his doctor, on January 3, 2007, and Roma's Kelly on January 2, 2007, which stated that Porcillo was being treated for "Incisional hernia - post operative bowel obstruction" and that the dates of treatment were "12/1/06, 12/6/06, 1/3/07." (Porcillo

4

Dep. at 82-83 & Ex. 21.) On January 3, 2007, he presented at his doctor's appointment with a fever. (Porcillo Dep. at 83-84 & Ex. 22.)

On January 5, 2007, Porcillo e-mailed Klein and Kelly with an "update" that his "belly button is still infected. Also my incision is not healed yet. I have another appointment . . . the 10th of January, and won't give me [sic] a release to return back to work." Porcillo offered his doctor's telephone number for any questions. (Porcillo Dep. at 84 & Ex. 23.) Kelly responded, thanking him for the update and urging him to "[t]ake care of yourself. Unfortunately these things take time so don't give up!" (Porcillo Dep. Ex. 24.)

Kelly testified that the January 5, 2007 e-mail from Porcillo concerning his medical condition and relating that the doctor had not cleared him for work was not sufficient to trigger his FMLA benefits "because he still had not worked a period of time to qualify for the Family and Medical Leave Act. He had been on - he was on leave during this period of time. He was not working,." (Kelly Dep. at 45; see also id. at 40-41 ("He had been employed one year, but he had not worked one year. . . .My understanding is he actually has to specifically work that one year" to qualify for FMLA).) Kelly testified that she did not consider FMLA leave for Porcillo because he had not physically worked for one year at that point. (Kelly Dep. at 51-52.)[4]

---

[4] According to Kelly, had Porcillo's first request for leave been made on January 5, 2007 (and he had not been out on leave during December on short-term disability), "he would have qualified for FMLA had he worked from the date that he started, 1/2/06, until 1/5/07. . . . In this circumstance, if this was his first request, I would have contacted him, asked him to call [the insurer] and apply for short-term disability, Family Medical Leave. I would have forwarded the forms to him to sign, complete, and forwarded on to out corporate office. And then it would have been taken over by the corporate office and [the insurer] from there as far as approving his disability." (Kelly Dep. at 45-46.)

5

On January 10, 2007, Porcillo reported to his doctor that he was still experiencing abdominal pain. (Porcillo Dep. at 88 & Ex. 25.) The doctor prescribed antibiotic treatment and determined "[a]t this point he is not cleared to go back to work." Porcillo was scheduled for a follow-up doctor's appointment in two weeks. (Porcillo Dep. Ex. 25.) Porcillo e-mailed Klein and Kelly that morning with an "update on my surgery." Porcillo said that while his infection was getting better, it still was not completely healed. He informed Roma that his next doctor's appointment was scheduled for January 24, 2007. "Thank You for your understanding." (Porcillo Dep. Ex. 26. Kelly replied that same morning: "Thanks for the update. Continue getting better!" (Porcillo Dep. Ex. 27.)

On January 15, 2007, Porcillo signed and dated a form for his doctor to complete to be submitted to Roma's insurance carrier for short-term disability benefits. It listed the medical condition as "incisional hernia," the dates of hospitalization as "12-1-06 to 12-6-06 & 12-15-06 to 12-17-06" and "most recent date of treatment" as "1-10-07." (Porcillo Dep. Ex. 28.)

On January 24, 2007, Porcillo's doctor observed that Porcillo was still experiencing pain in his abdomen and stated that "he still is not able to return to work as he is still having some abdominal pain." The physician scheduled another follow-up visit for two weeks later. (Porcillo Dep. Ex. 30.) Again, that same morning, Porcillo e-mailed Klein and Kelly with an updated regarding his doctor's appointment:

> Everything is starting to look a lot better, my infection is almost
> gone and my stomach mussels [sic] are almost healed, to the

---

At Roma, short-term disability and FMLA leave run concurrently. (Kelly Dep. at 47.)

> point I can almost wear slacks again. (instead of sweat pants).
> My next doctors [sic] appointment is February 7th, 2007 @ 8:00
> Am. She said if the infection is completely gone, and my
> stomach can handle wearing slacks by then, I can return to work
> on the 12th Of February.

(Porcillo Dep. Ex. 31.) Porcillo followed both e-mail communications with a phone call to Kelly. (Porcillo Dep. at 116-17.) Kelly e-mailed Klein that same date that she would "place a copy of [Porcillo's] e-mail in Joe's file and change him to 'active' status as soon as you let me know he actually returns." (Doc. 21-3 at 12.) Porcillo said that in one conversation, she said "Well, Dan really can't wait for you to come back." (Porcillo Dep. at 116.) Porcillo continued to heal and on February 7, 2007, his doctor wrote: "[h]e is doing very well status post his surgery and he will return to work on 02/12/2007." (Porcillo Dep. Ex. 32.)

Porcillo never requested FMLA leave ("I didn't know anything about the Family Leave and Medical and so I never asked") (Porcillo Dep. at 56), and he was never offered FMLA by Roma. (Id. at 25, 56, 58 ("[n]o one ever mentioned it to me"), 114, 117; Klein Dep. at 107, 149.) Porcillo's immediate supervisor Klein testified that he had never heard of the FMLA until 2007, after Porcillo was terminated. (Klein Dep. at 97-98.) Roma Florida human resources generalist Kelly said that she did not advise Porcillo about the FMLA. "This is why we send the form to the employees, so that they can have it in their possession to read it. And if they have any questions, can call and ask me." (Kelly Dep. at 22.) And Vistar human resources director K.P. Pastorini testified that Porcillo was not eligible for FMLA leave after his one-year employment anniversary because "he didn't apply." (Pastorini Dep. at 41, 43, 46, 53, 56 ("[i]t is my understanding that he did not request a leave of absence after January 2"), 76 ("it was my understanding that Mr. Porcillo was not eligible for FMLA at the time in

which he requested a leave of absence").)

Kelly testified that in order to request FMLA, Porcillo "just had to make us aware that - of his need for the leave. And if he qualified, it's our responsibility to handle it that way. . . . At the time he requested the leave, he was not eligible." (Kelly Dep. at 33.) Short-term disability and FMLA leave may run concurrently, and the requirements are the same; "[t]he leave of absence form is a generic form. It's made for not only medical leave, but Family Medical Leave and any other kinds of leave." To request FMLA leave, an FMLA-eligible employee must fill out the Leave of Absence form and then call the company's disability carrier "and request the Family Medical Leave as well as the short term disability." Then the carrier contacts the employee directly to communicate whether the leave has been approved. (Kelly Dep. at 47-49 and Ex. 2.)

While Porcillo was out on approved short-term disability leave, he was still employed by Roma drawing disability payments. Additionally, Roma was paying his health benefits during this period. (Klein Dep. at 34-35.)

Porcillo returned to work on February 12, 2007. He was fired February 13, 2007, effective February 16. (Porcillo Dep. at 28-30, 109.) Porcillo was not offered any alternative positions with the company. Roma contends that Porcillo was terminated because the company eliminated his position in a reduction in force. (Porcillo Dep. at 29-30; Klein Dep. at 24-25, 27; Kelly Dep. at 14 <u>see also</u> Porcillo Dep. Ex. 33 (position elimination package); Klein Dep. Ex. 3.) Porcillo was not terminated for performance issues. (Klein Dep. at 25, 86.) Porcillo cites to other facts, arguing that Roma's proffered reason was a pretext. (Porcillo Dep. at 30-31; Doc. 20 at 2, 15-20.)

8

Porcillo's lawsuit alleges that Roma both interfered with his FMLA rights, and retaliated against him for exercising his rights under the FMLA. (Doc. 20 at 11.)

## II. **FMLA Law**

There are two types of claims under the FMLA: (1) interference, where the employer burdens or denies a substantive statutory right to which the employee is entitled and (2) retaliation, where the employer discharges or otherwise discriminates against an employee for invoking rights under the Act. 29 U.S.C. § 2615(a)(1) and (2); O'Connor v. PCA Family Health Plan, Inc., 200 F.3d 1349, 1352 (11th Cir. 2000).[5] Plaintiff alleges both theories. The threshold question common to both claims is whether Porcillo's is an "eligible employee" entitled to the protections of the FMLA.

The FMLA defines "eligible employee" as "an employee who has been employed (I) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A)(I) and (ii); see also 29 C.F.R. §§ 825.110(a)(1) and (2) (2007); 29 C.F.R. §§ 825.110(a)(1) and (2) (2009).[6] In determining

---

[5] While the FMLA does not specifically label them as "interference" or "retaliation" claims, Eleventh Circuit precedent has adopted these designations to classify a plaintiff's FMLA claim. O'Connor, 200 F.3d at 1352.

[6] The FMLA authorizes the Secretary of Labor to promulgate regulations necessary to carry out the FMLA. 29 U.S.C. § 2654. Because the FMLA itself does not indicate when the determination for eligibility should be made, the Court turns to the Secretary of Labor's regulations. See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 844 (1984)(noting that regulations "are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute").

The Department of Labor's FMLA regulations were revised, effective January 16,

9

the 12 months of employment, "[i]f an employee is maintained on the payroll for any part of a week, including any periods of paid or unpaid leave (sick, vacation) during which other benefits or compensation are provided by the employer . . . [including group health plan benefits], the week counts as a week of employment." 29 C.F.R. 825.110(b) (2007); see also 29 C.F.R. § 825.110(b)(3) (2009). "The determinations of whether an employee has worked for the employer for at least 1,250 hours in the past 12 months and has been employed by the employer for a total of at least 12 months must be made as of the date leave commences." Id. § 825.110(d) (2007). In 2009, the regulation was amended to read as follows:

> (d) The determination of whether an employee has worked for the employer for at least 1,250 hours in the past 12 months and has been employed by the employer for a total of at least 12 months must be made as of the date the FMLA leave is to start. An employee may be on "non-FMLA leave" at the time he or she meets the eligibility requirements, and in that event, any portion of the leave taken for an FMLA-qualifying reason after the employee meets the eligibility requirement would be "FMLA leave." (See § 825.200(b) for rules governing the content of the eligibility notice given to employees.)

29 C.F.R. § 825.110(d) (2009).

The parties do not dispute that the 2009 regulation amendment, 29 C.F.R. § 825.110(d) (2009), which provides that "[a]n employee may be on 'non-FMLA leave' at the

---

2009. See The Family and Medical Leave Act of 1993, 73 Fed.Reg. 67934 et seq. (Nov. 17, 2008)(to be codified at 29 C.F.R. pt. 825). The revised regulations were not in effect at any time relevant to plaintiff's claims and when his lawsuit was filed in October 2008. (See Doc. 1.) However, the parties dispute whether the 2009 regulations apply or provide guidance to the resolution of the issues here. Thus, both the regulations in effect in 2007, the time of the events in this dispute, as well as the current regulations, are set forth here.

10

time he or she meets the eligibility requirements, and in that event, any portion of the leave taken for an FMLA-qualifying reason after the employee meets the eligibility requirement would be 'FMLA leave,'" is implicated by the facts of this case. What they do dispute is whether the 2009 amended regulation applies to the facts here. (See Docs. 16 at 7; 20 at 5-8.) Roma contends that the 2009 regulations are not retroactive or applicable to the events in this case which occurred in 2006 and 2007. See (Doc. 16 at 7 (citing Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988).) Porcillo argues that the 2009 version of 29 C.F.R. § 825.110(d) applies as a clarification of existing law, and is not a new rule or regulation requiring a determination of retroactivity. (Doc. 20 at 6 (citing Heimmermann v. First Union Mortgage Corp., 305 F.3d 1257, 1260-61 (11th Cir. 2002).)

### III.   Discussion

Defendant Roma rests its argument upon 29 C.F.R. § 825.110(d) (2007) which provides that "determinations of whether an employee has worked for the employer for at least 1,250 hours in the past 12 months and has been employed by the employer for a total of at least 12 months must be made as of the date leave commences." Thus, argues Roma, Porcillo "cannot establish that he was entitled to the protections of the FMLA, as he had not worked for Roma for the requisite one year qualifying period at the time leave commenced" on December 1, 2006. (Doc. 16 at 1-2, 6-7.)

A series of cases interpreted section 825.110(d) prior to the 2009 amendment to mean that FMLA eligibility is determined on the date that leave for the particular qualifying sickness or disability commences, and that eligibility determination applies for the duration of the leave. According to this line of cases, "courts must characterize a period of leave, for

11

FMLA purposes, at the front end. An unbroken leave taken for a single purpose does not change its character in the midst of the leave just because the employee becomes eligible under the FMLA." Adly v. SuperValu, Inc., No. 06-CV-5108 (PJS/RLE), 2007 WL 2226040, at *3 (D. Minn. Aug. 3, 2007); see also e.g. Flannery v. Nextgen Healthcare Information Sys., Inc., No 05-6007, 2006 WL 2338408, at *2-3 (E.D. Pa. Aug. 10, 2006); Sewall v. Chicago Transit Auth., No. 99 C 8372, 2001 WL 40802, at *5 (N.D. Ill. Jan. 16, 2001)("[a]n employee is entitled to FMLA leave at the onset of a 'serious health condition'"; allowing employee's FMLA leave to commence at his 12-month anniversary, a month after going out on approved company sick leave, would allow the employee a "windfall"); Jessie v. Carter Health Care Ctr., Inc., 926 F. Supp. 613, 617 (E.D. Ky. 1996)(plaintiff's claim that she later became eligible at her one-year anniversary due to the fact that she had not been terminated but had only been given a forced leave of absence is not relevant; it is her status when placed on forced leave which matters).

Other cases interpreted the pre-amendment regulation, 29 C.F.R. § 825.110(d), to permit an employee's authorized leave under the employer's personal leave policy to "transform" into FMLA leave upon eligibility. Borner v. Zale Lipshy Univ. Hosp., No. Civ.A. 301CV227-R, 2002 WL 449576, at *4 (N.D. Tex. March 20, 2002); see also Ruder v. MaineGeneral Medical Center, 204 F. Supp.2d 16, 19 (D. Me. 2002)(employee could use his two-week accrued unused vacation time to achieve one year of employment and become eligible for FMLA's protections; the employee can take advantage of "his ordinary leave and his FMLA-protected leave consecutively"); Nameth v. Celina Financial Corp., No. 1:04 CV 2282, 2006 WL 561860, at *6, 7 (N.D. Ohio March 2, 2006)(approved days absent from work

on sick leave before 12-month anniversary of employment, during which employee remained on employer's payroll, are "properly counted as days of employment under 29 C.F.R. § 825.110(b)"; employee satisfied the eligibility requirement because she was employed for 12 months on her anniversary date "- the date her FMLA leave commenced").

In light of courts' varying interpretations of regulation 29 C.F.R. § 825.110(d) and the ambiguities that resulted, the Department of Labor ("DOL") amended the regulation. The DOL's explanation of its final rule 825.110(d) (2009) states that "[p]roposed paragraph (d) *clarified* that an ineligible employee on non-FMLA leave may become eligible for FMLA leave while on leave (by meeting the 12-month requirement), and that any portion of the leave taken for a qualifying reason after the employee becomes eligible would be protected FMLA leave." The Family and Medical Leave Act of 1993, 73 Fed. Reg. 67934-01 at 11 (Nov. 17, 2008)(to be codified at 29 C.F.R. pt. 825)(emphasis added). "The final rule *clarifies* in § 825.110(d) . . . that an employee may attain FMLA eligibility while out on a block leave when the employee satisfies the requirement for 12 months of employment." Id. at 15 (emphasis added). Addressing the scenario where an employee is first out on employer-provided leave, the DOL in 2008 stated:

> Because an employee remains employed while out on employer-provided leave, the employee becomes eligible under the statutory definition upon reaching the 12-month threshold. Of course, as the proposed and final rules also clarify, any leave that employers voluntarily provide before an employee attains eligibility under the FMLA is not FMLA leave. Therefore, the FMLA protections do not apply to such leave, and employers may apply their normal policies to such leave. Employers may not, however, count any such non-FMLA leave towards the employee's 12-week FMLA entitlement.

13

Id. at 16. The DOL addressed the "windfall" concern, saying "[a]n employer that voluntarily allows a new employee with no FMLA rights to go out for a family or medical condition could similarly voluntarily allow a more senior employee with the same condition to extend a leave beyond the legally required 12 weeks." Id. "[T]he Department believes that this *clarification* of the current rule is the best interpretation of the statutory language, which defines 'eligible employee' as one 'who has been employed for at least 12 months.' 29 U.S.C. § 2611(2)(A)." Id. (emphasis added).

"While not dispositive, an agency's determination that a new statement is a clarification of existing law, rather than an entirely new rule, is generally given much weight." Heimmermann, 305 F.3d at 1260. "Another significant indicator that a statement only clarifies existing law is when the law supposedly being clarified is ambiguous." Id. The DOL's clarification of regulation 29 C.F.R. § 825.110(d) appears to be consistent with the FMLA statute and applies to Porcillo's situation..

The Eleventh Circuit's decision in Walker v. Elmore County Bd. of Educ., 379 F.3d 1249, 1253 (11th Cir. 2004), decided before the regulations were amended in 2009 and with facts clearly distinguishable from those presented here, does not require a different result. In Walker, the court held that plaintiff's pre-eligibility "request for maternity leave did not constitute a protected attempt to obtain an FMLA benefit." 379 F.3d at 1252. The court held that under the pre-2009 29 C.F.R. § 825.110(d), a non-tenured school teacher, working in her first year under an annual contract with no expectation of re-employment under state law, who requested maternity leave during that first year of employment to commence prior to her one-year eligibility anniversary, and whose annual contract was not renewed prior to that

14

anniversary, was ineligible to claim benefits under the FMLA. "There can be no doubt that the request - made by an ineligible employee for leave that would begin when she would have been ineligible - is not protected by the FMLA." Id. at 1253. The court in dicta stated that "the determination of whether an employee has been employed for at least twelve months for FMLA eligibility 'must be made as of the date leave commences.'" 379 F.3d at 1253 n.10 (quoting 29 C.F.R. § 825.110(d)).) The court limited its opinion to a holding that the FMLA "does not protect an attempt to exercise a right that is not provided by FMLA, i.e., the right to leave before one becomes eligible therefor," and declined to reach the question "of whether one can attempt to exercise a right under the FMLA that one will have in the future." Id. at 1253.

Unlike here, Walker involved an employee who never reached her one-year employment anniversary, and who was not on approved leave at the time she became eligible for FMLA benefits. Walker was not a case where an employee remained on the payroll on approved medical leave at the time the employee reached his or her one-year eligibility milestone. Here, Porcillo was employed by Roma on January 2, 2007, the date of his twelve-month anniversary, and thus was eligible for FMLA protection pertaining to qualifying leave taken after that date.

While Roma could provide health and disability benefits equal to or greater than that required by the FMLA, it could not provide less than required by the FMLA. See 29 U.S.C. § 2653; 29 C.F.R. § 825.700 (2007) and (2009). Porcillo was employed by Roma and on company-approved disability leave on January 2, 2007, his twelve-month anniversary date. Consistent with the terms of the FMLA, 29 U.S.C. § 2611(2)(A)(I) and (ii), which have not

15

changed, as well as the DOL's clarifying amendment to the statute's implementing regulation, plaintiff Porcillo was, as of January 2, 2007, an "eligible employee" under the FMLA and therefore may pursue his FMLA claim. It is hereby

**ORDERED**:

1. Defendants' Motion For Summary Judgment (Doc. 16) is **DENIED**.[7]

2. The following deadlines apply:[8]

| | |
|---|---|
| Filing of Pretrial Statement: | **March 22, 2010** |
| Final Pretrial Conference:[9] | **March 25, 2010**<br>**2:30 p.m.** |
| Trial Term Begin: | **April 5, 2010**<br>**(9:00 a.m. Jury 4 days)** |

All other terms of the Court's initial Case Management and Scheduling Order (Doc. 9) remain in effect.

---

[7] As stated above, genuine issues of material fact remain as to the other bases raised by defendants in their motion for summary judgment.

[8] The parties may request a mediation be scheduled with a United States Magistrate Judge if they believe that a mediation of this case would be beneficial.

[9] The Final Pretrial Conference and the Trial of this case will be held in Courtroom 10D, Tenth Floor, United States Courthouse, 300 North Hogan Street, Jacksonville, Florida. Photo identification must be presented to court security officers upon request. Although cell phones and laptop computers are generally not permitted in the Courthouse, counsel will be permitted to bring those items into the Courthouse for purposes of this hearing by presenting a copy of this Order to court security officers. All cell phones must remain off while court is in session.

**DONE AND ORDERED** at Jacksonville, Florida, this 1st day of February, 2010.

_____
TIMOTHY J. CORRIGAN
United States District Judge

jl.
Copies to:
Counsel of Record